**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **MONTEZ ARTIS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 21 C 5779** |
| | ) | |
| **JACOB BEDWELL, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**MEMORANDUM OPINION AND ORDER**

MATTHEW F. KENNELLY, District Judge:

Montez Artis, who is imprisoned in the Illinois Department of Corrections (IDOC), alleges that prison officials refused to provide him kosher meals during an approximately ten-month period while he was housed at Stateville Correctional Center. He has sued Quentin Tanner, who at the time was the food service program manager at Stateville, Jacob Bedwell, a correctional food service supervisor at Stateville, and Damien Davis, a chaplain at Stateville, for violating his constitutional right to practice his Jewish faith under 42 U.S.C § 1983.[1] Bedwell and Davis have moved for summary judgment on Artis's claims.[2] Artis has filed a cross-motion for summary judgment. For

---

[1] Artis seeks damages against the defendants in both their individual and official capacities. Pl.'s Fourth Am. Compl. ¶¶ 8, 10-11. But official-capacity damages claims against state officials are barred by the Eleventh Amendment. *Kentucky v. Graham*, 473 U.S. 159, 169 (1985). Artis may proceed only on his individual capacity claims.

[2] Tanner, Bedwell, and Davis moved for summary judgment in the defendants' initial motion for summary judgment. *See* Defs.' Mot. for Summ. J. at 1. But in their response to the plaintiff's motion for summary judgment, the defendants stated that "Defendants Davis and Bedwell have moved for summary judgment" and that "Defendant Tanner has not." Defs.' Resp. & Reply at 1 n. 1. And in Artis's reply in support of his motion for

the reasons below, the Court grants summary judgment in favor of Davis, denies Taylor and Bedwell's motion for summary judgment, and denies Artis's motion for summary judgment.

## Background

The following facts are undisputed unless otherwise noted.

### A.    Stateville religious diet procedures

Artis was incarcerated at Stateville from August 2012 until December 2021.  At Stateville, the chaplains are responsible for managing religious diet requests.  Stateville inmates who seek a special diet to accommodate religious practices must apply by submitting a religious diet request form.  As chaplain 1, Davis oversaw the religious diet request process.  After receiving a request form, Davis would consult with George Adamson, Stateville's chaplain 2, about the inmate's request.  If the chaplains approved the request, the form would be sent to the warden for final approval.  Davis was responsible for entering approved religious diet accommodations into Offender 360, IDOC's inmate tracking system.

The Stateville kitchen staff maintained a separate list of inmates with approved religious diet accommodations on a Microsoft Excel spreadsheet.  As food service program manager, Tanner was responsible for maintaining the kitchen's kosher diet list, which contained the names of all inmates who had been approved to receive a kosher diet.  The kosher diet list could be accessed on the computer only by authorized

---

summary judgment, he asserts that Tanner has "withdrawn" his motion for summary judgment.  Pl.'s Reply at 1 n. 1.  Given these discrepancies, the Court will address the defendants' motion for summary judgment as if it applies to all three defendants.

Stateville employees who had received login credentials. During the relevant time period, only Tanner and the "one or two other people" who served as food supervisor 3s had the login credentials necessary to edit the spreadsheet containing the kosher diet list. Tanner Dep. at 13:12-15. Once Tanner received a notification from the chaplain that an inmate was approved for a kosher diet, Tanner or a food supervisor 3 would add the inmate to the kosher diet list. The kosher diet list was printed daily, and a physical version of the list was distributed to the food supervisor responsible for preparing the inmates' diet trays.

Bedwell began working as a kitchen food supervisor 1 at Stateville in April 2019. In April 2020, Bedwell was promoted to a kitchen food supervisor 2 position. It is undisputed that Bedwell did not have the login credentials necessary to access the electronic version of the kosher diet list spreadsheet. The defendants contend that as food supervisor 1, Bedwell "was responsible for the daily kitchen work, supervising inmates' cooking and checking temperatures," and that his responsibilities did not change upon his promotion to food supervisor 2. Defs.' L.R. 56.1 Stmt. ¶ 25. Artis challenges this contention and asserts that Bedwell's responsibilities also included "us[ing] the Kosher List to ensure that inmates received the correct diet," "help[ing] prepare the trays in the kitchen," and "updat[ing] the Food Supervisor 3s about which inmates were no longer at Stateville and needed to be removed from various kitchen lists." Pl.'s Resp. to Defs.' L.R. 56.1 Stmt. ¶ 25.

## B.     Artis's incarceration at Stateville

Artis is Jewish and has been practicing the religion of Judaism since 2007 or 2008. On September 15, 2017, Artis filed a lawsuit alleging that various Stateville

3

officials had violated his constitutional and statutory religious rights by failing to provide an adequate kosher diet.  Neither Tanner nor Bedwell were named defendants in that case.  The parties reached a settlement in November 2019, and the case was dismissed in December 2019.  In 2018, Artis filed suit against Bedwell and several other correctional officers challenging the conditions of his confinement at Stateville.  In 2020, the suit was dismissed with prejudice for failure to prosecute.

Shortly after his arrival at Stateville in 2012, Artis requested and was approved for a kosher diet.  Artis's kosher diet approval remained in effect until 2021.  The parties agree that Artis's name "remained off the Kosher List from December 15, 2019, until October 21, 2020."  Defs.' Resp. to Pl.'s L.R. 56.1 Stmt. ¶ 28.  Consequently, Artis did not receive kosher meal trays for approximately ten months.  *Id.* ¶ 30.

The events leading up to Artis's absence from the kosher diet list are disputed. Artis alleges that in January 2020, shortly after the settlement in his 2017 case was approved, he informed Bedwell that the kosher meal tray food had not changed for over a week and lamented that "the kosher diet had become unpalatable."  Fourth Am. Compl. ¶ 24.  Artis testified that Bedwell responded "you suing me and now you want me to help you? . . . yeah, right. I'mma take care of you all right."  Pl.'s Resp. to Defs.' L.R. 56.1 Stmt. ¶ 19.  Artis alleges that this interaction occurred "the day before he stopped receiving kosher meal trays from the kitchen."  *Id.*  The defendants do not provide an explanation for Artis's absence from the kosher diet list but suggest that his name may have been deleted inadvertently or erased due to a "technical issue."  Defs.' Resp. & Reply at 8.

On January 23, 2020, Artis filed a grievance stating that he "has not received his

4

kosher diet tray in over a week" and "was told by the worker that his kosher trays were discontinued."  Pl.'s L.R. 56.1 Stmt., Ex. 12 at 000128.  On March 31, 2020, grievance counselor Cynthia Harris e-mailed Tanner, Davis, and Adamson informing them that she had received Artis's grievance and asking if Artis should receive a kosher diet. Later that day, Adamson responded that Artis "is Jewish and supposed to be on the kosher diet."  *Id.*, Ex. 14.  In her response to Artis's grievance, Harris stated that Artis is "listed as being of the Jewish religion."  *Id.*, Ex. 12 at 000128.  On April 23, 2020, Harris sent an e-mail to Tanner stating that she had received a grievance from Artis indicating that "he is not given Kosher meals" and asking Tanner to provide a response to the grievance.  *Id.*, Ex 15.  Tanner responded that Artis "has been receiving his Kosher Meal since the day he has been placed on the Kosher Diet."  *Id.*  Tanner testified that after receiving Harris's e-mail, he confirmed Artis's kosher diet eligibility using "the spreadsheet that we use in 360."  Tanner Dep. at 64:3-11.  On April 27, 2020, a grievance officer responded to Artis stating that "[p]er dietary, grievant is on the Kosher diet list and receiving it."  Pl.'s L.R. 56.1 Stmt., Ex 13.

In May 2020, Artis informed Davis that he had not been receiving kosher meals. On June 19, 2020, Artis submitted another grievance stating that he had spoken to Davis "on several occasions" regarding his kosher diet and that he had not received a kosher meal tray for four or five months.  *Id.*, Ex. 16.  Artis also stated that due to the denial of his kosher meals he had "been forced to miss many meals and to eat commissary."  *Id.*  Davis confirmed during his deposition that he spoke to Artis about the kosher meal tray issue, *see* Davis Dep. at 58:13-18, but testified that he could recall speaking with Artis about this issue on only one occasion.  *Id.* at 62:15-19.  Davis

5

further testified that after a grievance counselor contacted him about Artis's grievance, he informed Tanner by e-mail[3] and through a telephone call that Artis should be on the kosher list. *Id.* at 63:9-64:5, 65:16-66:8.

On July 30, 2020, Harris sent an e-mail to Tanner stating, "[w]hen you get a chance, will you let me know if inmate Montez[4] B84281 is on the list to receive a Kosher Diet? He said that he is supposed to receive a Kosher diet and is not receiving it." Pl.'s L.R. 56.1 Stmt., Ex. 17. It is unclear from the record whether Tanner replied to this e-mail. On August 18, 2020, Harris responded to Artis's grievance, stating that "[p]er the dietary supervisor inmate is receiving his kosher meal(s). Unable to substantiate any staff misconduct." *Id.*, Ex. 16. On October 21, 2020, Stateville grievance officer Monika Williams responded to Artis, stating that she "did not see [Artis's] name on the Kosher List located in Dietary" and noting that Artis's request to be added to the kosher diet list had been sent to Davis for processing. *Id.*, Ex. 18. That same day, Davis sent an e-mail to Williams, Tanner, Adamson, and food supervisor 3s Hosea Harris and Nadine Lockett requesting that Artis be placed on the kosher diet list. An unidentified individual handwrote Artis's name in the margin of the physical kosher diet list for October 21,

---

[3] The defendants object to Davis's reference to the content of the e-mail to Tanner as "inadmissible hearsay" and also dispute Artis's factual assertions about the e-mail on the ground that the defendants "failed to discover the described e-mail after a good faith search." Defs.' Resp. to Pl.'s L.R. 56.1 Stmt. ¶ 45. But the defendants admit in their own statement of facts that "Defendant Davis contacted Defendant Tanner, through e-mail and phone call, advising him that Plaintiff made the complaint that he was not receiving his kosher diet and instructed Defendant Davis to add him to their list." Defs.' L.R. 56.1 Stmt. ¶ 46.

[4] In her e-mail, Harris referred to Artis by his first name, Montez, rather than his surname, but she included Artis's inmate identification number.

2020. Artis's name was added to the kosher diet Excel spreadsheet on October 28, 2020.

In October 2021, Artis filed this suit. The Court previously dismissed Artis's Religious Land Use and Institutionalized Persons Act claim against the defendants. Both parties' motions for summary judgment are now before the Court.

## Discussion

Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact." Fed. R. Civ. P. 56(a). "A genuine issue of material fact arises only if sufficient evidence favoring the nonmoving party exists to permit a jury to return a verdict for that party." *Brummett v. Sinclair Broad. Grp., Inc.*, 414 F.3d 686, 692 (7th Cir. 2005). When considering a motion for summary judgment, the Court construes the facts and draws all reasonable inferences in favor of the nonmoving party. *Logan v. City of Chicago*, 4 F.4th 529, 536 (7th Cir. 2021).

Artis claims that the defendants violated the free exercise clause of the First Amendment by denying him a kosher diet for a number of months in 2020. To establish a free exercise claim, the plaintiff must "submit evidence from which a jury could reasonably find that the defendants personally and unjustifiably[5] placed a substantial

---

[5] The placement of a substantial burden on a plaintiff's religious exercise may be justified if it is "reasonably related to a legitimate penological interest." *Thompson v. Holm*, 809 F.3d 376, 380 (7th Cir. 2016) (citing *Turner v. Safley*, 482 U.S. 78, 89–91 (1987)). The defendants concede that the absence of Artis's name from the kosher diet list was not reasonably related to a legitimate penological interest. Defs.' Resp. to Pl.'s L.R. 56.1 Stmt. ¶ 54. This Court therefore need not address whether any potentially substantial burden imposed on Artis's religious practices was justified.

burden on his religious practices." *Neely-Bey Tarik-El v. Conley*, 912 F.3d 989, 1003 (7th Cir. 2019) (citation omitted). "[A] substantial burden is one that 'put[s] substantial pressure on an adherent to modify his behavior and to violate his beliefs.'" *Id.* at 1003 (quoting *Thomas v. Rev. Bd. of Indiana Emp. Sec. Div.*, 450 U.S. 707, 718 (1981)).

### A.    Defendants' motion for summary judgment

The defendants argue that Artis cannot prevail on his free exercise claim because he has failed to offer evidence that would permit a finding that they placed a substantial burden on his religious practice.   Additionally, Bedwell and Davis contend that Artis has not offered evidence that they were personally involved in the alleged constitutional violation.

#### 1.    Substantial burden

Artis argues that the approximately ten-month deprivation of kosher meals substantially burdened his ability to practice his Jewish faith.  The Seventh Circuit "ha[s] repeatedly held that forcing an inmate to choose between daily nutrition and religious practice is a substantial burden." *Thompson v. Holm*, 809 F.3d 376, 380 (7th Cir. 2016). The court has further noted that for an individual who adheres to a specific diet due to his religion, dietary requests are equivalent to "asking for accommodation of his religious exercise." *Koger v. Bryan*, 523 F.3d 789, 797 (7th Cir. 2008).

In support of his free exercise claim, Artis primarily relies on the Seventh Circuit's decision in *Thompson*.  In *Thompson*, a Muslim inmate sued various prison officials after he was denied meal bags for two days during Ramadan.  *Thompson*, 809 F.3d at 378.  The Seventh Circuit reversed the district court's grant of summary judgment in favor of the defendants, concluding that "the denial of meal bags substantially burdened

8

[plaintiff]'s free exercise rights." *Id.* at 380. The court noted that in addition to not receiving a proper meal for over forty-eight hours, the plaintiff also faced "pressure" to "resign himself to the cafeteria" as well as "anxiety" that "left him unable to practice Ramadan properly." *Id.*

Similarly to the plaintiff in *Thompson*, Artis has offered evidence that he was denied a diet that complied with his approved religious accommodations. Artis testified that during the period that he did not receive kosher meal trays from the kitchen, he "was hungry plenty of days" and "some days, [he] wanted to give up on [his] religion." Artis Dep. at 160:2-161:2. He further stated that "every time the meal time came, [he] would miss meals." *Id.* at 163:8-16. Artis said that from January to September 2020, he experienced hunger "probably over 20, 30 times." *Id.* at 178:8-14. A reasonable jury could conclude that Artis's religious exercise was substantially burdened by the denial of kosher meal trays. *See Sharp v. Liebel*, No. 3:20-CV-327-JD-MGG, 2021 WL 4147036, at *8 (N.D. Ind. Sept. 13, 2021) ("If [plaintiff] establishes that his need for a kosher diet is a sincerely held religious belief, denial of the diet is a substantial burden to his religious practices.").

The defendants attempt to distinguish *Thompson* by noting that in that case, "the prison officials intentionally stopped giving the inmate his meal bags." Defs.' Resp. & Reply at 4. The defendants do not expressly identify the relevance of this, but they appear to argue that intent is a requisite element of a plaintiff's free exercise claim. This argument is unpersuasive. In *Thompson*, the defendant's intent was not discussed in the context of the Seventh Circuit's substantial burden analysis. *See Thompson*, 809 F.3d at 380. The court found that whether the defendants intentionally violated the

plaintiff's rights was necessary to determine which type of damages the plaintiff was entitled to seek, *Thompson*, 809 F.3d at 381 ("If a trier of fact credits Thompson's evidence that the defendants intentionally violated his rights, he may receive both nominal and punitive damages."), and whether the defendants were entitled to qualified immunity. *Id.* ("Because the evidence supports an inference that the defendants intentionally and unjustifiably forced this burdensome choice on [plaintiff], qualified immunity is unavailable."). But the defendants have not moved for summary judgment with respect to damages or based on qualified immunity. The Seventh Circuit's consideration of the defendants' intent in *Thompson* is therefore not relevant.

The defendants cite no other legal authority in support of the proposition that intent is a requisite element of demonstrating the defendant imposed a substantial burden on religious practice. On the contrary, post-*Thompson*, courts in this district have consistently held that the refusal to provide an inmate with a diet that complies with their sincerely held religious beliefs constitutes a substantial burden on their religious practice without inquiring into the prison officials' intent. *See Brim v. Donovan*, No. 15-CV-658-JDP, 2017 WL 3972519, at *9 (W.D. Wis. Sept. 7, 2017) (rejecting the defendant's argument that they were entitled to summary judgment on the plaintiff's free exercise claim due to lack of intent); *Oliver v. Harner*, No. 14-CV-315-NJR-DGW, 2016 WL 1117084, at *8 (S.D. Ill. Mar. 22, 2016) (citing *Thompson* in support of proposition that denial of inmate's request for kosher diet amounted to substantial burden).

The defendants also contend that Artis's inability to receive a kosher diet did not substantially burden his exercise of his religious beliefs because he "had other options to eat kosher items but chose not to." Defs.' Mot. for Summ. J. at 6. The defendants

10

cite Artis's deposition testimony to argue that he "could have chosen to eat the kosher items off the general chow line." *Id.* at 5. But in the testimony that the defendants cite, Artis stated only that during the period when he did not receive kosher meal trays, he ate a limited amount of kosher foods that were included in the non-kosher meal trays, such as whole vegetables and fruits, but primarily adhered to his kosher diet by purchasing items from commissary. Artis Dep. at 130:4-21, 131:1-19, 145:14-146:1.

The defendants' argument that Artis did not face a substantial burden because he was able to piece together a kosher diet with commissary items is foreclosed by the Seventh Circuit's decision in *Jones v. Carter*, 915 F.3d 1147 (7th Cir. 2019). In that case, an inmate whose sincere religious beliefs required him to regularly eat halal meat brought suit after the prison began serving members of his religion a meatless diet. *Id.* at 1148. The defendant in *Jones* argued that because halal meat was available for purchase at the commissary, the plaintiff's lack of meat was the result of "'his own spending choices'" rather than the defendant's conduct. *Id.* at 1149. The Seventh Circuit rejected the defendant's argument and concluded that the plaintiff's religious exercise was substantially burdened by the prison's refusal to provide halal meat. *Id.* at 1150. The Seventh Circuit also noted that other circuits had found that "asking inmates to pay daily for religiously compliant diets was a substantial burden." *Id.* at 1150 (collecting cases).

The availability of kosher food items at Stateville's commissary does not preclude a finding that the defendants' failure to provide a kosher meal tray imposed a substantial burden on Artis. *See Johns v. Lemmon*, 980 F. Supp. 2d 1055, 1059 (N.D. Ind. 2013) (holding that requiring the plaintiff to buy commissary food for his Sabbath substantially

burdened his religious exercise). The defendants also note that at times Artis "created his own kosher diet through cooking in his cell." Defs.' Mot. for Summ. J. at 5-6. But the defendants cite no legal authority in support of the proposition that an inmate's ability to prepare his own food diminishes the burden of being deprived of the meal trays that are generally provided to all inmates. And "a substantial burden can exist even if alternatives to enduring it are available." *Njie v. Dorethy*, 766 F. App'x 387, 391 (7th Cir. 2019) (citing *Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682, 720–23 (2014)).

A reasonable jury could conclude that Artis was "forced to choose between foregoing adequate nutrition or violating a central tenet of his religion" and consequently faced a substantial burden on his religious practice. *Thompson*, 809 F.3d at 380. The defendants are therefore not entitled to summary judgment on Artis's free exercise claim.

### 2. Personal involvement

Bedwell and Davis contend that there is "no evidence" that they "were personally involved in Plaintiff's alleged constitutional deprivation." Defs.' Mot. for Summ. J. at 8. "[I]ndividual liability under § 1983 requires 'personal involvement in the alleged constitutional deprivation.'" *Minix v. Canarecci*, 597 F.3d 824, 833 (7th Cir. 2010) (citation omitted). "To survive summary judgment, a plaintiff claiming a violation of § 1983 must produce evidence that the defendant 'caused or participated in [the] constitutional deprivation.'" *Delapaz v. Richardson*, 634 F.3d 895, 899 (7th Cir. 2011) (citation omitted). "[A]n official satisfies the personal responsibility requirement of § 1983 if she acts or *fails* to act with a deliberate or reckless disregard of the plaintiff's constitutional rights." *Fillmore v. Page*, 358 F.3d 496, 506 (7th Cir. 2004) (citation

12

omitted).  Evidence of mere negligence is insufficient to sustain a section 1983 claim.
*Jones v. City of Chicago*, 856 F.2d 985, 992 (7th Cir. 1988).

Artis contends that Davis's "inaction" in response to his absence from the kosher
diet list amounted to personal involvement in the alleged constitutional violation.  Pl.'s
Mot. for Summ. J. & Resp. 14.  But the evidence in the record shows that Davis
repeatedly attempted to rectify the denial of Artis's kosher diet.  Davis testified that after
being made aware that Artis was not receiving a kosher diet, he e-mailed and called
Tanner "to inform them that he's supposed to be on the kosher list or kosher diet."
Davis Dep. at 62:23-64:8, 64:18-20 (confirming that his communications with Tanner
consisted of "one e-mail and one call.").  After receiving a notification from a grievance
officer that Artis remained absent from the kosher diet list, Davis emailed multiple
Stateville officials requesting that the kitchen staff "[p]lease place Artis . . . on kosher
list."  Pl.'s L.R. 56.1 Stmt. ¶ 52.  Moreover, Artis testified that he "believe[s] Chaplain
Davis . . . was the only reason that [he] got back on the diet."  Artis Dep. at 164:19-
165:16.

Artis suggests various actions that he believes Davis could have taken to ensure
that Artis was added to the kosher diet list earlier.  *See* Pl.'s Mot. for Summ. J. & Resp.
at 15.  But a defendant cannot be liable under Section 1983 "if the remedial step was
not within [his] power."  *Miller v. Harbaugh*, 698 F.3d 956, 962 (7th Cir. 2012).  And Artis
has not adduced evidence from which a reasonable jury could find that ensuring that
inmates received the appropriate meal was Davis's responsibility or within his power.  It
is undisputed that as a chaplain, Davis was not involved in the distribution of kosher
meal trays and did not have access to the kitchen's kosher diet list.  Pl.'s Resp. Defs.'

L.R. 56.1 Stmt. ¶ 44.  Artis concedes that Davis's responsibilities in determining placement on the kosher diet list were limited to "handling inmate requests for religious diets" and "authorizing religious diets generally."  Pl.'s Mot. for Summ. J. & Resp. at 14. Artis does not argue that Davis made any errors in the process of approving his dietary request or submitting the approval to the Stateville kitchen staff for compliance. Instead, Artis asserts that Davis should have done more to ensure that he was readded to a kosher diet list that Davis was not authorized to view or modify.  This assertion is insufficient to create a genuine dispute of material fact.  *Williams v. Moffett*, No. 18 C 5563, 2021 WL 825670, at *14 (N.D. Ill. Mar. 3, 2021) (granting summary judgment in favor of defendant that had no involvement in the distribution or preparation of religious diet that plaintiff was denied).

For these reasons, Davis is entitled to summary judgment.

Artis contends that Bedwell was directly or indirectly involved in his absence from the kosher diet list.  Artis testified that during "the first week in January" 2020, the attorneys representing him in his 2017 lawsuit informed him that a settlement agreement had been approved.  Artis Dep. at 56:21-57:7.  Artis stated that shortly after this phone call, he complained to Bedwell about the repetitiveness of the kosher meal trays.  Artis said that in response to his complaint, Bedwell stated "you suing me and now you want me to help you? . . . yeah, right. I'mma take care of you all right."  Pl.'s Resp. to Defs.' L.R. 56.1 Stmt. ¶ 19.  Artis says he was "removed from the [kosher] diet" the day after his conversation with Bedwell.  Artis Dep. at 56:21-57:7.

In his statement of material facts, Artis appears to contend that he was unable to obtain kosher meal trays as early as December 2019, as opposed to January 2020.

14

Specifically, he now contends, and the defendants agree, that "Mr. Artis remained off the Kosher List from December 15, 2019, until October 21, 2020." Defs.' Resp. to Pl.'s L.R. 56.1 Stmt. ¶ 28. This does not line up precisely with the timing of Bedwell's alleged comment. But there is a sufficiently close temporal proximity between Bedwell's alleged comment—which, even if in January 2020, indicates prior awareness of Artis's earlier lawsuit against him—and Artis's absence from the kosher diet list to permit a reasonable jury to find that Bedwell, as the alleged comment suggests, was involved in the denial of kosher meals to Artis. *Kidwell v. Eisenhauer*, 679 F.3d 957, 966 (7th Cir. 2012) ("[T]he closer two events are, the more likely that the first caused the second.").

The defendants contend that Artis's claim against Bedwell is "purely speculative." Defs.' Mot. for Summ. J. at 10. But Artis has adduced evidence that Bedwell had both the motivation and the means to interfere with his ability to obtain a kosher diet. As a food supervisor 1 or 2, Bedwell did not have authorization to edit the kosher diet list directly. But Bedwell testified that he could indirectly modify the list by suggesting to a kitchen supervisor 3 that an inmate should be removed from the list due to circumstances such as a transfer. Bedwell Dep. at 31:10-16. Bedwell further testified that after he told a kitchen supervisor 3 to remove an inmate from the kitchen diet list, the list would be updated to reflect that removal. *Id.* at 32:4-14. Viewing the evidence in the light most favorable to Artis, Bedwell's statement, combined with the asserted temporal proximity, suffice to permit a reasonable jury to find that he was involved in the denial of Artis's kosher meals.

## B.    Plaintiff's motion for summary judgment

Artis contends that it is undisputed that Tanner personally imposed a substantial

burden on his religious practices. The defendants assert that genuine factual disputes remain regarding whether Artis sincerely believed that he must maintain a kosher diet and whether Tanner was personally involved in the denial of kosher meal trays to Artis.

### 1. Sincerity of Artis's religious belief

The defendants argue that Artis's absence from the kosher diet list could not have violated his free exercise rights he did not sincerely believe that he must maintain a kosher diet. "Religious belief must be sincere to be protected by the First Amendment, but it does not have to be orthodox." *Grayson v. Schuler*, 666 F.3d 450, 454 (7th Cir. 2012). "Evidence of nonobservance is relevant on the question of sincerity," but is not "conclusive of insincerity." *Reed v. Faulkner*, 842 F.2d 960, 963 (7th Cir. 1988). "[A] sincere religious believer doesn't forfeit his religious rights merely because he is not scrupulous in his observance." *Grayson*, 666 F.3d at 454.

Artis testified that following a kosher diet is a "central part" of his religious practice. Artis Dep. at 33:9-34:9. The defendants contend that Artis's religious beliefs were not sincere because he admitted in his deposition that he occasionally ate non-kosher meals. Specifically, Artis testified that in 2021, he ate non-kosher food items such as "fried chicken," "pizza," and other "delicious stuff." *Id.* at 83:13-19. Artis further testified that "when this place, the IDOC, placed a substantial burden on your food and your religious beliefs, I mean, it makes it extremely impossible to be adherent to the diet or the rules of kashrut." *Id.* at 84:16-20. The defendants also note that Artis asked to be removed from Stateville's kosher list in 2021, and that when he was transferred to Pontiac, he did not ask to be added to that prison's kosher diet list.

Prison officials have the authority to inquire into the sincerity of an inmate's

professed religious beliefs to evaluate whether the basis for a requested dietary accommodation is authentic. *Cutter v. Wilkinson*, 544 U.S. 709, 725 n.13 (2005). And "[i]nconsistencies in professed beliefs may be evidence of insincerity." *Williams*, 2021 WL 825670, at *15. But as Artis notes, all of the instances that the defendants claim call into question the sincerity of his beliefs took place in 2021, *after* Artis had been denied kosher meals for approximately ten months in 2020. During Artis's deposition, he clarified that his consumption of non-kosher meals occurred after he asked to be removed from the kosher diet list in 2021. Artis Dep. at 82:20-83:7. Furthermore, Artis testified that he kept kosher throughout the period that the kitchen denied his requests for kosher meal trays. Artis stated that after being informed that he was removed from the kosher diet list in 2020, he "mostly" obtained his food from commissary, and "everything [he] ate was kosher." Artis Dep. at 74:8-23.

Because there is no indication that the defendants were aware that Artis was willing to consume non-kosher food during the ten-month period that he was denied kosher meal trays, they cannot viably claim that the denial was based on a determination, an indication, or even a suspicion that Artis's professed religious beliefs were insincere. *Oliver*, 2016 WL 1117084, at *9 ("Importantly, however, there is no evidence that Chaplain Harner knew of these purchases prior to denying Plaintiff's request for a kosher diet."). Furthermore, "[t]he fact that an imprisoned person who is chronically underfed on a prison's kosher meal plan occasionally gives into temptation or social pressure to consume non-kosher food does not necessarily mean that his belief in the importance of keeping kosher is not sincerely held." *Slavin v. Tanner*, No. 20 C 1180, 2023 WL 5721184, at *3 (N.D. Ill. Sept. 5, 2023) (Kennelly, J.). Evidence

that Artis's beliefs may have later evolved to allow for adherence to a non-kosher diet has "minimal bearing" on the evaluation of the sincerity of his beliefs during the relevant time period. *Bonnell v. Burnett*, No. 07-CV-15444, 2009 WL 909575, at *3 (E.D. Mich. Mar. 31, 2009); *Shaheed-Muhammad v. Dipaolo*, 393 F. Supp. 2d 80, 91 (D. Mass. 2005) (noting evidence of nonobservance that occurred months after alleged constitutional violation is not dispositive); *Blount v. Ray*, No. 7:08CV00504, 2009 WL 2151331, at *5 (W.D. Va. July 17, 2009) ("It is only logical that an inmate's religious beliefs may change over time and that his sincerity in holding and practicing such beliefs may also wane or disappear altogether.").

That said, "[w]hether a religious belief is sincerely held is a question of fact best left to a jury to resolve." *Williams v. Miller*, No. 04-CV-0342-MJR, 2007 WL 2893641, at *4 (S.D. Ill. Sept. 28, 2007). Given Artis's testimony,[6] genuine issues of material fact remain regarding the sincerity of Artis's religious beliefs. *See Williams v. Moffett*, No. 18 C 5563, 2021 WL 825670, at *15 (N.D. Ill. Mar. 3, 2021) (concluding inmate's request to be removed from kosher diet list created genuine question of fact as to sincerity of his religious beliefs).

### 2. Tanner's personal involvement

Artis asserts that "Tanner is liable for Mr. Artis's deprivation because the undisputed facts show that he intentionally—or, at best, recklessly—caused the

---

[6] Artis objects to the admissibility of a portion of the evidence the defendants reference in support of their argument that his religious beliefs are not sincerely held. *See* Pl.'s Resp. to Defs.' L.R. 56.1 Stmt. ¶ 10. Because excluding this evidence would make no difference in the outcome, the Court need not address its admissibility at this stage. Artis may raise the point in a motion *in limine* if he wishes.

continued deprivation of Mr. Artis's constitutional rights over many months in 2020."

Pl.'s Reply at 5.  But the defendants dispute Artis's characterization of Tanner's

responsibilities as food service program manager as well as Artis's description of the

facts leading up to his absence from the kosher diet list.  Artis asserts that "Tanner was

responsible . . . for ensuring that inmates who were approved by the chaplaincy to

receive a kosher diet ultimately received their kosher meals."  Pl.'s L.R. 56.1 Stmt. ¶ 17.

In support of this assertion, Artis directs the Court's attention to Tanner's testimony that

his responsibilities towards inmates with religious diet accommodations included

"mak[ing] sure if it was a kosher diet, that they received their kosher meals."  Tanner

Dep. at 9:7-12.  The defendants contend that Tanner was not responsible for ensuring

that eligible inmates received kosher meals because "dietary staff did not distribute the

[kosher meal] trays during the relevant period."  Defs.' Resp. to Pl.'s L.R. 56.1 Stmt. ¶

17.

  "Although direct participation is not necessary" to demonstrate personal

involvement, "there must at least be a showing that the [defendant] acquiesced in some

demonstrable way in the alleged constitutional violation." *Palmer v. Marion County*, 327

F.3d 588, 594 (7th Cir. 2003).  The defendants cite no legal authority in support of the

proposition that only the individuals that are responsible for physically delivering meal

trays to inmates are not the only defendants that can be liable for constitutional

violations related to the denial of an inmate's religious diet.  That said, Artis's description

of Tanner's general obligations related to the kosher diet list is insufficient to eliminate

the existence of a genuine factual dispute regarding whether Tanner caused or

participated in the denial of kosher meal trays to Artis.  At least one additional kitchen

19

employee had the authority to edit the kosher diet list along with Tanner, Tanner Dep. at 13:12-15, and Artis does not point to evidence that Tanner was aware that he was not receiving kosher meals prior to Harris's e-mail about the first grievance. In light of Artis's repeated complaints regarding the deprivation of a kosher meal tray, a reasonable jury could conclude that Tanner knowingly or recklessly failed to carry out his religious diet responsibilities and therefore personally participated in the alleged constitutional violation. But a reasonable jury also could conclude that Tanner was not responsible for ensuring Artis received a kosher meal tray or that he was simply negligent in carrying out his duties as food service program manager. There are genuine disputes of material fact that must be resolved at a trial.

Furthermore, the circumstances surrounding Artis's absence from the kosher diet list remain less than crystal clear. Artis asserts that he was "removed" from the kosher diet list, and he contends that one or more members of the kitchen staff are responsible for his removal. Pl.'s L.R. 56.1 Stmt. ¶ 27; *see* Pl.'s Mot. for Summ. J. & Resp. at 14. The defendants challenge Artis's version of events and contend that Artis's absence from the kosher diet list was due to a "technical error." Defs.' Resp. & Reply at 5. Additionally, Tanner testified that he did not remove Artis from the kosher diet list or instruct another food supervisor to do so. Defs.' Stmt. of Add'l Material Facts, ¶¶ 1-2.

In sum, there is a genuine factual dispute regarding whether Tanner was personally involved in the alleged constitutional deprivation at issue. The Court finds that Artis is not entitled to summary judgment.

### Conclusion

For the foregoing reasons, the Court grants summary judgment in favor of

20

defendant Davis but otherwise denies the defendants' motion for summary judgment [dkt. no. 93]. The Court also denies the plaintiff's motion for summary judgment [dkt. no. 98]. The case has been set for a telephonic status hearing on July 2, 2024 at 9:20 a.m. to discuss the upcoming trial date. The following call-in number will be used: 650-479-3207, access code 980-394-33.

_____
MATTHEW F. KENNELLY
United States District Judge

Date: July 1, 2024